UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENTURE GENERAL AGENCY, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | Case No. 19-cv-02778-TSH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 8 |

## I.  INTRODUCTION

Plaintiffs Venture General Agency, LLC and Old American County Mutual Fire Insurance Co. (together, "Plaintiffs") bring negligence and negligence per se claims against Defendant Wells Fargo Bank, N.A., related to a third party that fraudulently impersonated Old American and induced Venture to transfer funds to bank accounts at Wells Fargo.  Wells Fargo moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 8.  Plaintiffs filed an Opposition (ECF No. 10) and Wells Fargo filed a Reply (ECF No. 11).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Wells Fargo's motion.

## II.  BACKGROUND

Old American is a property and casualty insurance company.  Compl. ¶ 2, ECF No. 1.  Venture is a managing general agent appointed to hold funds in a premium trust account as a fiduciary of Old American.  *Id.* ¶ 1.

On March 13, 2017, Venture's CFO, Brittany McKinney, received an email from an "unknown fraudster" impersonating Denise Wolfe, a Senior Resource Accountant at Old American from Wolfe's work email address, denise.wolfe@oldam.com.  *Id.* ¶ 8.  The fraudster

falsely represented to McKinney that Old American was under audit and, in a subsequent email from a false but similar email address, denise.wolfe@accountant.com, requested that she change the account information on the Automated Clearing House ("ACH") destination. *Id.* ¶ 9. The fraudster then provided a SunTrust Bank account number and induced McKinney to transfer $987,247.81 into that account. *Id.* ¶ 10. SunTrust immediately recognized the transfer as fraudulent, rejected it, and closed the account. *Id.* ¶ 11. On March 17, 2017, the fraudster emailed McKinney again, stating that the prior SunTrust account information was incorrect and providing a new SunTrust account number. *Id.* ¶ 12. The fraudster requested McKinney transfer the original amount to the new SunTrust account. *Id.* ¶ 13. SunTrust again recognized the indicia of fraud and rejected the second ACH transfer. *Id.* ¶ 14.

Sometime prior to March 21, 2017, the fraudster opened a Wells Fargo account in the name of Old American. *Id.* ¶ 15. On March 21, 2017, the fraudster represented to McKinney that there was an issue with the second SunTrust account and requested she re-issue the $987,247.81 a third time, this time to the Wells Fargo account. *Id.* ¶ 16. On April 12, 2017, the fraudster informed McKinney that the funds from the prior two transfers should be "returned" to the fraudulent Wells Fargo account. *Id.* ¶ 18. McKinney was then further induced to make two transfers of $137,424,06 each and a transfer of $446,016.93 into the Wells Fargo account. *Id.* ¶ 19. In total, Wells Fargo allowed $1,708,112.86 of Old American's funds to flow from Venture to the false Old American account set up by the fraudster. *Id.* ¶ 20.

Old American discovered the fraud on or about May 26, 2017, when it contacted McKinney regarding the ACH transfers. *Id.* ¶ 21. That same day, Old American contacted Wells Fargo to report the fraud. *Id.* ¶ 22. In a June 15, 2017 correspondence with a Wells Fargo Financial Crimes Consultant, Venture received confirmation from Wells Fargo that it possessed knowledge of the fraudulent account and transfers since at least May 26, 2017. *Id.* ¶ 24.

On or about May 31, 2017, the Federal Bureau of Investigation became involved and began investigating the Wells Fargo account and transfers. *Id.* ¶ 23. On June 20, 2017, Wells Fargo informed Venture that it could not provide any information regarding the account of a customer and that Venture should request that the FBI submit an inquiry to a designated

administrative-type email address within Wells Fargo. *Id.* ¶ 27. The FBI submitted such an inquiry one day later. *Id.* ¶ 28.

Having received no response in more than three months, Old American transmitted a letter to Wells Fargo on September 22, 2017, demanding the return of the funds that were transferred. *Id.* ¶ 29. On November 28, 2017, the Wells Fargo Financial Crimes Division informed Venture that all inquiries should be directed through law enforcement and that Wells Fargo would not provide any information. *Id.* ¶ 30. Wells Fargo refused to provide information on the amount of Old American's money remaining in the account and the procedures for returning any remaining funds. *Id.*

Five months later, on April 30, 2018, Wells Fargo provided a response to the initial demand letter in which it refused to provide any information about the location, identity or procedures for the funds and denied all responsibility for the fraudulent transfers. *Id.* ¶ 31. Wells Fargo reiterated this position in a follow-up correspondence dated October 1, 2018. *Id.* ¶ 32.

Plaintiffs filed the present case on May 21, 2019, alleging one count of negligence and one count of negligence per se. *Id.* ¶¶ 39-68. They allege Wells Fargo failed to follow proper statutory procedures in confirming its customer's identity. *Id.* ¶¶ 44-48. They also allege Wells Fargo has a duty to investigate potential criminal activity related to its customers' accounts and to assist noncustomer fraud victims in retrieving their funds. *Id.* ¶ 50. Plaintiffs further allege Wells Fargo failed to comply with the Bank Secrecy Act by not accurately establishing the identity of the fraudster. *Id.* ¶¶ 57-66. As a result, Plaintiffs allege Wells Fargo facilitated the commission of fraud upon them. *Id.* ¶¶ 49, 67-68.

Wells Fargo filed the present motion on June 25, 2019.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.

3

*Twombly*, 550 U.S. at 555 (quotations and citation omitted); Fed. R. Civ. P. 8(a)(2) (A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

Wells Fargo argues Plaintiffs' claims must fail because the Uniform Commercial Code ("UCC") expressly immunizes banks that rely on the beneficiary account number in processing funds transfers. Mot. at 1. It argues the UCC displaces common law claims, like negligence and negligence per se, and that the applicable statute, UCC section 11207(b), authorizes banks to rely on the beneficiary account number in processing payment orders, providing immunity to banks in such circumstances. *Id.* Wells Fargo further argues that it does not owe a duty of care to non-customers such as Plaintiffs. *Id.*

In response, Plaintiffs argue the UCC is inapplicable to their claims because they not only seek relief for Wells Fargo's processing of the wire transfers, but for its acts after processing them, including "a failure to communicate with Plaintiffs, a failure to work efficiently and effectively

4

with the Federal Bureau of Investigation to remedy the fraud, and a failure to advise Plaintiffs as to the existence, amount and whereabouts of any remaining funds." Opp'n at 5. They maintain the UCC was not intended "to prevent common law negligence claims against banks for failing to properly communicate, address, account for and remedy fraudulent transfers after receipt of notice of same." *Id.* at 6. As to the merits of their claims, Plaintiffs concede that Wells Fargo owes no duty to noncustomers, *id.* at 7, but argue their complaint "alleges more than a mere third party or arms-length relationship" between them and Wells Fargo as Plaintiffs were "the originators and depositors of the disputed funds" and "were foreseeable and identifiable injured parties to which [Wells Fargo] owed a duty to act with reasonable care." *Id.* at 8. Finally, Plaintiffs argue they assert a valid claim for negligence per se for Wells Fargo's alleged violations of the Bank Secrecy Act's Anti-Money Laundering regulations because they properly borrow the statute to prove a duty of care and the standard of care. *Id.* at 9.

**A.     The UCC Does Not Displace Plaintiffs' Negligence Claim**

Wells Fargo moves to dismiss Plaintiffs' negligence claims on the ground that UCC Article 4A—adopted as Division 11 of the California UCC, Cal. Com. Code §§ 11101, et seq.—displaces common law negligence claims and otherwise provides immunity to Wells Fargo via its safe-harbor provision. Mot. at 4. Article 4A displaces any common-law claim if the UCC's provisions squarely cover the transactions at issue. *Zengen v. Comerica Bank*, 41 Cal. 4th 239, 244, 253-54 (2007). Section 11104(a) of the California UCC defines "funds transfers" as:

> the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

The parties do not dispute that an ACH transfer fits within the definition of a "funds transfer." Mot. at 4; Opp'n at 5.

In *Zengen*, the Court confirmed that in enacting Article 4A, it was the Legislature's intent to establish a "detailed scheme for analyzing the rights, duties and liabilities of banks and their customers" with respect to funds transfers. 41 Cal. 4th at 251-52. Article 4A of the UCC was

5

therefore intended to be the "exclusive means of determining the rights, duties and liabilities" of banks and their customers with respect to such transfers:

> Funds transfers involve competing interests—those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

*Id.* at 252 (quoting Code Comment to Cal. Com. Code § 11102). As a result, "because the U.C.C. provides a remedy for a bank's processing of fraudulent payment orders, it displaces common-law claims like the negligence claim here." *Sliders Trading Co. L.L.C. v. Wells Fargo Bank NA*, 2017 WL 6539843, at *5 (N.D. Cal. Dec. 21, 2017) (citing *Zengen*, 41 Cal. 4th at 251).

If Plaintiffs' negligence claim were based solely upon the wire transfers, it would be subject to dismissal. *Id.* However, as the Court recognized in *Zengen*, the UCC does not displace "all common law actions based on all activities surrounding funds transfers." 41 Cal. 4th at 254. The Court noted "'[t]he exclusivity of Article 4–A is deliberately restricted to any situation covered by particular provisions of the Article. Conversely, situations not covered are not the exclusive province of the Article.'" *Id.* (quoting *Sheerbonnet, Ltd. v. Am. Exp. Bank, Ltd.*, 951 F. Supp. 403, 407-08 (S.D.N.Y. 1995) (internal citation and quotations omitted). The *Zengen* Court cited cases in which such claims were allowed to proceed, including *Schlegel v. Bank of Am., N.A.*, 271 Va. 542 (2006). In *Schlegel*, the plaintiff sued a receiving bank for a funds transfer that was made pursuant to unauthorized payment orders and for the bank's subsequent conduct in freezing the funds rather than returning them. *Id.* at 546. The bank moved for summary judgment, arguing that the plaintiff's claims fell within Title 8.4A-204, Virginia's version of Article 4A. *Id.* at 548-49; *id.* at 550 ("Title 8.4A . . . is essentially identical to Article 4A of the Uniform Commercial Code"); Va. Code § 8.4A-204. The Virginia Supreme Court overturned the lower court's grant of summary judgment in part, holding that the plaintiff's claim for the unauthorized payment orders

was preempted by Title 8.4A, but the claim for the subsequently frozen funds was not. *Id.* at 553-54. The Court found that "the freezing of the funds . . . instead of returning [them] is not a situation covered by any of the particular provisions of Title 8.4A." *Id.* at 554.

Here, too, Plaintiffs' negligence claim is not based solely on the wire transfers but also on Wells Fargo's subsequent actions. Compl. ¶¶ 22-33, 50-54. Thus, accepting these allegations as true and construing them in the light most favorable to them, the Court finds Plaintiffs' claims are not preempted. *See Zengen*, 41 Cal. 4th at 254; *see also Sliders*, 2017 WL 6539843, at *8 (in finding negligence claim based on wire transfer was preempted by Article 4A, the court distinguished *Schlegel* because, unlike the plaintiff in *Schlegel*, the plaintiff alleged no common law claims based on subsequent conduct).

## B. Negligence

Wells Fargo argues that, even if the UCC did not displace Plaintiffs' negligence claim, they cannot plead negligence because they were noncustomers to which it owed no duty of care. Mot. at 7-8. Plaintiffs do not dispute this position. Opp'n at 7. Instead, they argue Wells Fargo owed them a duty of care after it received actual notice from them of the fraudulent deposits. *Id.*

The elements of a negligence claim are: (1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). Duty of care is an "obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks." *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008) (quotations omitted). "The existence of a duty is a question of law and thus is often suited to a Rule 12(b)(6) disposition." *Sliders*, 2017 WL 6539843, at *8 (citing *Avila v. Citrus Cmty. College Dist.*, 38 Cal. 4th 148, 161 (2006)).

"Recent cases have held that absent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer." *Software Design & Appl., Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 479 (1996) (citations omitted); *see also Dodd v. Citizens Bank of Costa Mesa*, 222 Cal. App. 3d 1624, 1628 (1990) (holding that a bank does not owe a duty of care to a noncustomer absent a showing that the noncustomer was an alter ego of, or had personally guaranteed the debts of, the bank's customer). Here, there is no dispute that Plaintiffs are noncustomers as they allege

7

the fraudster opened the account in the name of Old American. Compl. ¶ 15. Still, they argue they were the "originators and depositors" of the wire transfers into the account and "were foreseeable and identifiable injured parties to which Defendant owed a duty to act with reasonable care." Opp'n at 8. Plaintiffs note "[i]t is well established that a bank has a 'duty to act with reasonable care in its transactions with its depositors . . . .'" *Id.* (quoting *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 543 (1996)). However, "depositors" as used in *Chazen* refers a bank's duty to act with reasonable care in its transactions with account holders as "an implied term in the contract between the bank and its depositor." *Chazen*, 61 Cal. App. 4th at 543 (citing *Barclay Kitchen, Inc. v. Cal. Bank*, 208 Cal. App. 2d 347, 353 (1962)); *see also Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 741 (2010) ("The relationship of bank and depositor is founded on contract, which is ordinarily memorialized by a signature card that the depositor signs upon opening the account.") (citation and quotations omitted); Cal. Com. Code § 4104(a)(5) (defining "customer" as "a person having an account with a bank"). The relationship "entails no contractual obligation to persons other than the account holder." *Chazen*, 61 Cal. App. 4th at 537 (citing *Dodd*, 222 Cal. App. 3d at 1628).

Thus, although there is no dispute that Venture originated the wire transfers, this does not create a duty of care owed to Plaintiffs. *See Spa-Kur Therapy Dev., Inc. v. Bank of Am., Nat'l Ass'n*, 2019 WL 1099834, at *2 (S.D. Cal. Mar. 8, 2019). In *Spa-Kur*, the plaintiff, like Plaintiffs in this case, wired funds to a third party's bank account and then brought a claim against the bank for negligence after discovering the account was opened as part of a fraudulent scheme. *Id.* at *1. Although the plaintiff originated the transfer, the court dismissed the negligence claim, holding the plaintiff "was not a depositor at Citibank and, therefore, no contractual relationship existed between the parties that created a duty of care." *Id.* at *2. The same is true here, where Plaintiffs were not depositors at Wells Fargo and no contractual relationship existed.

Further, "it has been held that banks do not owe a duty of care to noncustomers even when the noncustomer is the person in whose name an account was fraudulently opened." *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 226 (4th Cir. 2002). In *Software Design*, a financial consultant embezzled money from Software Design through a bank account he opened bearing the

8

1  company name. 49 Cal. App. 4th at 476-77. The court affirmed the trial court's dismissal of

2  Software Design's negligence claim against the bank, finding "the primary flaw" in Software

3  Design's negligence theory was the lack of a relationship between it and the bank. *Id.* at 478.

4  Even though the bank account used to defraud Software Design bore its own name, the court held

5  that a bank does not owe a duty of care to protect noncustomers against fraud. *Id.* at 479; *see also*

6  *Gil v. Bank of Am., N.A.*, 138 Cal. App. 4th 1371, 1379 (2006) ("Appellants' contention that Bank

7  breached a duty of care . . . is directly contrary to case law which holds that 'a bank owes no duty

8  to nondepositors to investigate or disclose suspicious activities on the part of an accountholder.'")

9  (quoting *Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138, 1149 (2005)); *McCallum v.*

10  *Rizzo*, 1995 WL 1146812, at \*3 (Mass. Super. Oct. 13, 1995) (a bank account is intended to

11  benefit the person who opened the account; to extend the duty of care to others would expose

12  banks to "unlimited liability" for unforeseeable frauds).

13  The Court is persuaded by the reasoning articulated in the numerous cases holding that a

14  bank does not owe noncustomers a duty of care. Imposing a duty of care is "an expression of

15  policy considerations leading to the legal conclusion that a plaintiff is entitled to a defendant's

16  protection." *Vasquez v. Residential Inv. Inc.*, 118 Cal. App. 4th 269, 279 (2004) (citation and

17  quotations omitted). "Even under general California negligence law, if a person has not created a

18  danger, then generally he has no duty to come to the aid of another person (a victim) absent a

19  relationship that gives rise to a duty to protect." *Sliders*, 2017 WL 6539843, at \*8 (citing *Zelig v.*

20  *Cty. of Los Angeles*, 45 P.3d 1171, 1182 (Cal. 2002); *McGarry*, 158 Cal. App. 4th at 995). As

21  such, Plaintiffs' negligence claim fails because they have not pled they are customers of Wells

22  Fargo. *See Rodriguez v. Bank of the West*, 162 Cal. App. 4th 454, 461 (2008) ("A bank's basic

23  duty of care—to act with reasonable care in its transactions with its customers—arises out of the

24  bank's contract with its customer.") (citing Cal. Com. Code § 4104(a)(5)). The Court therefore

25  **GRANTS** Wells Fargo's motion to dismiss Plaintiffs' negligence claim.

26  **C.    Negligence Per Se**

27  Plaintiffs premise their negligence per se claim on Wells Fargo's alleged failure to comply

28  with the Bank Secrecy Act ("BSA") as amended by the USA PATRIOT Act, 31 U.S.C. §§ 5311,

et seq. Compl. ¶ 57. They allege Wells Fargo failed to comply with the BSA's customer identification program and customer due diligence requirements. *Id.* ¶¶ 58-65. In its motion, Wells Fargo argues negligence per se is not a separate cause of action and it does not provide a private right of action for violation of a statute. Mot. at 11.

The BSA requires financial institutions and other businesses to file certain reports or records that are likely to have a "high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 5311. The Patriot Act amended the BSA to require financial institutions to establish anti-money laundering programs including the development of internal policies, procedures, and controls; designation of a compliance officer; ongoing employee training; and an independent audit function. *Id.* § 5318(h). The purpose of these programs is to assist the government: "Congress' purpose in enacting the [BSA] was to ensure that certain business records assist government agencies in conducting criminal, tax, or regulatory investigations." *Martinez-Colon v. Santander Nat'l Bank*, 4 F. Supp. 2d 53, 57 (D. Puerto Rico 1998) (citing 31 U.S.C. §§ 5321-22). The BSA requires banks to implement "KYC/CIP" (Know Your Customer and Customer Identification Program) policies and procedures to prevent fraudulent and otherwise criminal activity. *See Sterling Sav. Bank v. Poulsen*, 2013 WL 3945989, at *19 (N.D. Cal. July 29, 2013).

While these statutes provide for civil and criminal penalties, a defendant's liability for failure to comply is to the United States government. 31 U.S.C. §§ 5321-22. For this reason, courts are unanimous in holding that there is no private right of action under the BSA or Patriot Act. *See, e.g., Poulsen*, 2013 WL 3945989, at *19 (BSA and Patriot Act do not provide a private right of action); *James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 106 (3d Cir. 2006) ("James' claim under the Bank Secrecy Act, 31 U.S.C. § 5318, does not authorize a private cause of action against a financial institution or its employees.") (citing *Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 371 (3d Cir. 2005) (explaining that a private citizen may only enforce a federal law if Congress has created a private right of action)); *AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004) ("[T]he Bank Secrecy Act does not create a private right of action."); *Towne Auto Sales, LLC v. Tobsal Corp.*, 2017 WL 5467012, at *2 (N.D. Ohio Nov. 14,

2017) (dismissing negligence per se claim because the BSA does not provide a private cause of action); *Trudel v. SunTrust Bank*, 223 F. Supp. 3d 71, 91 (D.D.C. 2016) (no private cause of action under the BSA or Patriot Act); *Shtutman v. TD Bank, N.A.*, 2014 WL 1464824, at *2 (D.N.J. Apr. 15, 2014) ("[I]t is undisputed that there is no private right of action under the Bank Secrecy Act or the relevant regulations."); *Bottom v. Bailey*, 2013 WL 431824, at *5 (W.D.N.C. Feb. 4, 2013) (finding the BSA does not serve as a basis for a private right of action and citing cases from other jurisdictions in support); *New World Mortg. v. TD Bank*, 2011 WL 13225032, at *1 (C.D. Cal. Aug. 3, 2011) ("The Bank Secrecy Act does not create a private right of action."); *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 874-75 (N.D. Iowa 2009) (listing district court cases that have held the same); *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 326 (D. Conn. 2008) (the BSA and Patriot Act do not authorize a private right of action).

Further, as there is no private right of action, there can be no duty of care arising out of the BSA's monitoring requirements. *See Lusk v. Kellogg*, 2011 WL 13225140, at *6 (C.D. Cal. Aug. 10, 2011) (where plaintiff argued he was "not asserting a private right of action under the Bank Secrecy Act, but rather is using ongoing violations of federal law as evidence of negligence," the court dismissed the claim with prejudice, finding "[t]he Bank Secrecy Act creates neither a private right action nor any parallel duty to a bank customer."); *Belle Meade Title & Escrow Corp. v. Fifth Third Bank*, 282 F. Supp. 3d 1033, 1040 (M.D. Tenn. 2017) (BSA does not create a private right of action and therefore does "not create a common law duty on the part of banks to non-customers."); *Ferring v. Bank of Am. NA*, 2016 WL 407315, at *4 (D. Ariz. Feb. 3, 2016) ("[T]he BSA does not authorize a private right of action for its violation," and plaintiff therefore "cannot rely on the BSA . . . to establish a duty."); *SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 775 (E.D. Mich. 2013), *aff'd*, 774 F.3d 351 (6th Cir. 2014) (As the BSA does not create a private right of action, it also "does not provide a basis for imposing a duty of care owed by [the bank] to Plaintiff."); *Blanchard v. Lee*, 2013 WL 4049003, at *3 (E.D. La. Aug. 9, 2013) ("[T]he Bank Secrecy Act does not create a private right of action or give rise to a duty."); *Pub. Serv. Co. of Okla. v. A Plus, Inc.*, 2011 WL 3329181, at *8 (W.D. Okla. Aug. 2, 2011) ("Courts have repeatedly rejected negligence claims based on a bank's duty arising under the [Bank Secrecy]

11

Act, concluding a bank's duty created by the Act is owned only to the government and not to private parties."); *In re Agape*, 681 F. Supp. 2d 352, 360-61 (E.D.N.Y. 2010) ("because the Bank Secrecy Act does not create a private right of action, the Court can perceive no sound reason to recognize a duty of care that is predicated upon the statute's monitoring requirements."); *Armstrong*, 678 F. Supp. 2d at 874-75 ("Because the Bank Secrecy Act does not permit a private right of action, it follows that it cannot be construed as giving rise to a duty of care flowing to plaintiffs in this case."); *Marlin v. Moody Nat'l Bank, N.A.*, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006) ("The obligation under [the BSA] is to the government rather than some remote victim. The [bank's] obligation is not to roam through its customers looking for crooks and terrorists. By that act, banks do not become guarantors of the integrity of the deals of their customers. It does not create a private right of action and, therefore, does not establish a standard of care."), *aff'd*, 248 Fed. App'x 534 (5th Cir. 2007); *Aiken v. Interglobal Mergers and Acquisitions*, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) ("[N]either the Bank Secrecy Act nor the Patriot Act affords a private right of action. This Court may not announce a duty of care where the [state] courts have declined to do so; nor may this Court impose a duty of care based upon a statute that does not permit a private right of action.").

Thus, since neither Act establishes a private cause of action, and Plaintiffs therefore cannot rely on them to create a duty of care, the Court **GRANTS** its motion to dismiss Plaintiffs' negligence per se claim.[1]

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Wells Fargo's motion to dismiss. Although the Court has serious doubts that Plaintiffs will be able to sufficiently amend their complaint to state a valid negligence cause of action against Wells Fargo, Plaintiffs' negligence

---

[1] In their opposition, Plaintiffs argue they are entitled to develop their negligence per se claim because "no published California decision has resolved the question of whether the BSA's provisions may serve as the standard of care for a private right of action against a bank for violations of the same." Opp'n at 9. However, based on the unanimous holdings of courts in other jurisdictions finding no duty of care based on the BSA, including the Central District's decision in *Lusk*, 2011 WL 13225140, at *6, the Court declines Plaintiffs' request to further develop the claim.

12

claim is **DISMISSED WITH LEAVE TO AMEND**. As for Plaintiffs' negligence per se claim, the BSA and Patriot Act do not establish a private cause of action, and Wells Fargo therefore owed them no duty of care. Plaintiffs' negligence per se claim is therefore **DISMISSED WITHOUT LEAVE TO AMEND**.

Plaintiffs shall file any amended complaint by August 29, 2019. Failure timely to file an amended complaint by the deadline may result in dismissal of Plaintiffs' claims. The August 22, 2019 Case Management Conference and related deadlines are **VACATED**.

**IT IS SO ORDERED.**

Dated: August 1, 2019

THOMAS S. HIXSON
United States Magistrate Judge